## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CERTAIN UNDERWRITERS AT )
LLOYD'S, LONDON, )
             Plaintiff, )
              )
      Vs. )     DOCKET NUMBER
              )
WESTFIELD SPORTSMAN'S CLUB, INC., )
CARL GIUFFRE, CHRISTOPHER )
PROVOST, PROVOST PRECISION )
PISTOLS, LLC, DOMENIC SPANO )
D&T ARMS, LLC, EDWARD FLEURY, )
COP FIREARMS AND TRAINING, )
SUZANNE BIZILJ, Individually and as )
Administratrix of the Estate of )
 ["NAME OMITTED"], CHARLES D. )
BIZILJ, AND ["NAME OMITTED"] )
          Defendants. )

## COMPLAINT FOR DECLARATORY RELIEF AND CLAIM FOR JURY TRIAL

### NATURE OF ACTION

1.    This Complaint is a request for judgment declaring that an insurance policy that Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 ("Underwriters") issued to Westfield Sportsman's Club, Inc. ("WSC") does <u>not</u> require Underwriters to continue to defend, or to indemnify, WSC, Carl Giuffre ("Giuffre"), Christopher Provost ("Provost"), Provost Precision Pistols, LLC ("P3 LLC"), Domenic Spano ("Spano"), and/or D&T Arms, LLC ("D&T"), relative to the claims brought in the case of <u>Suzanne Bizilj, et al v. Domenic J. Spano, et al.</u>, USDC Civil Action Number 3:10-cv-30080.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter under 28 USC § 1332 in that it arises between citizens of different states / countries and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3.      Venue is proper in this district under 28 USC § 1391(a)(2) and (b)(2) as this action concerns an insurance policy issued to WSC whose business is located in Westfield, Massachusetts.

## PARTIES

4.      Underwriters are those individuals subscribing to a policy of insurance, Number L200820173, a renewal multiline commercial policy that includes certain commercial general liability and commercial property coverage, issued by Underwriters to WSC through the National Rifle Association Endorsed Insurance Programs, effective April 1, 2008 to April 1, 2009.

5.      WSC is a duly organized Massachusetts Corporation with a principal place of business at Furrow Town Road, Westfield, Massachusetts.

6.      Carl Giuffre is an individual residing at 31 Walker Lane, West Hartford, Connecticut.

7.      Christopher Provost is an individual residing at 22 Sunrise Terrace, Weatogue, Connecticut.

8.      Provost Precision Pistols, LLC, is a duly organized Connecticut limited liability company with a principal place of business at 22 Sunrise Terrace, Weatogue, Connecticut.

9.      Domenic Spano is an individual residing at 18 Lilly Pond Trail, New Milford, Connecticut.

10.     D&T Arms, LLC is a duly organized Connecticut limited liability company with a principal place of business at 331 Kent Road, New Milford, Connecticut.

## OTHER INTERESTED PARTIES

11.     Edward Fleury is an individual with a last known address of 45 Harvard Avenue, Amherst, Massachusetts.

12.     COP Firearms and Training of Amherst is believed and understood to be a Massachusetts Corporation, although the Massachusetts Secretary of State Corporations Database reveals no such entity in existence in Massachusetts.

13.     Suzanne Bizilj is an individual residing at 195 Zaicek Road, Ashford, Connecticut, who is also the administratrix of the Estate of ["Name Omitted"] by appointment of the State of Connecticut, Court of Probate, District of Ashford.

14.     Charles D. Bizilj is an individual residing at 195 Zaicek Road, Ashford, Connecticut.

15.     ("Name Omitted"), a plaintiff in the civil action filed in this court under Civil Action Number 3:10-cv-30080, is an individual residing at 195 Zaicek Road, Ashford, Connecticut, and was the brother of the decedent, ("Name Omitted").

## BACKGROUND

16.     Suzanne Bizilj, Charles Bizilj, and ("Name Omitted"), their son, (hereafter "the Bizilj Family") have filed a civil action in this Court, Civil Action Number 3:10-cv-30080, stemming from the accidental death of ("Name Omitted"), a deceased member of the Bizilj family, asserting claims for negligent entrustment and furnishing of a machine gun / automatic weapon; negligent maintenance of the Uzi; negligent training of the "line officer" (as well as negligent monitoring and supervision of the firing of the weapon); wrongful death; and infliction of emotional distress by the surviving members of the Bizilj family ("Underlying Action").  These claims have been asserted against Domenic J. Spano, D&T, Carl Giuffre, P3 LLC, Edward Fleury, COP Firearms and Training, and Westfield Sportsman's Club, Inc.  A true copy of the Complaint in the Underlying Action is attached hereto as "A."

17.     The claims in the Underlying Action derive from a fatal accident that occurred on or about October 26, 2008, at a machine gun show and firearms exposition called the "Great New England Pumpkin Shoot" at the Westfield Sportsman Club on Furrow Town Road, Westfield, Massachusetts.

18.     As part of the Underlying Action, Westfield Sportsman's Club has asserted crossclaims for contribution against Edward Fleury d/b/a COP Firearms and Training, P3 LLC, Carl Giuffre, D&T Arms, and Domenic Spano.  A true copy of WSC's Answer, Counterclaim and Crossclaims in the Underlying Action is attached as "B."

19.     Also as part of the Underlying Action, Westfield Sportsman's Club, Inc., has asserted a third party complaint against Christopher Provost and Town Gun Shop, Inc.  A true copy of WSC's Third-party Complaint in the Underlying Action is attached as "C."

20.     Underwriters are providing a defense to WSC in the Underlying Action under a reservation of rights.

21.     Underwriters are also providing a defense to Giuffre, Provost and P3 LLC, Spano and D&T under reservation of rights relative to claims against them in the Underlying Action.

## POLICY LANGUAGE

22.     Underwriters issued policy L200820173, effective April 1, 2008 to April 1, 2009, ("the Policy") to WSC.  A true copy of the Policy is attached hereto as Exhibit "D."

23.     The following relevant provisions appear in the Policy:

*COMMERCIAL GENERAL LIABILITY COVERAGE FORM*

*Various provisions in this Policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.*

*Throughout this policy the words "UM" and "URM" refer to the insured club named in the declarations.  The words "we", "us" and "our" refer to the company providing this insurance.*

*The word "insured" means any person or entity identified as such under Section II – Who is an Insured or as may be added by endorsement to this policy and shown in a Certificate of Insurance issued by the company.*

*Other words and phrases that appear in quotation marks have special meaning.  Refer to Section V – Definitions.*

*SECTION I – COVERAGES*
***Coverage A – Bodily Injury and Property Damage Liability***
1.      *Insuring Agreement*
        *a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.*
        *. . .*
        *b.      This insurance applies to "bodily injury" and "property damage" only if:*
                *(1)      the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the coverage territory;*
                *(2)      the "bodily injury" or "property damage" occurs during the Policy period;*
*. . .*

24.     Under Section II, the Policy restricts "Who is an Insured," in relevant part, to:

*SECTION II – WHO IS AN INSURED*
        1.      *The named insured;*
        2.      *Each of the following is also an insured:*
                *a.      Your members, "executive officers", "employees" or your "voluntary workers", but only with respect to their liability while performing duties required for the "insured club's" activities.*
                *. . .*

25.     The Policy includes a "Criminal Acts" exclusion that provides:

***Additional Exclusions Applicable to Coverage A Bodily Injury and Property Damage Liability, Coverage B Personal and Advertising Injury Liability, Coverage C Medical Payments.***

*This insurance does not apply to:*
*. . .*
        10.     **Criminal Acts:**
        *"Bodily injury", "property damage", or "personal and advertising injury" arising out of a criminal act committed by an insured, or any criminal act in which an insured is an accomplice participant, or in which an insured has assisted or directed in any way whatsoever, whether the insured's actions are deemed intentional or not.*

26.     The Policy also contains a "Gun Shows" exclusion that provides:

        2.      *Exclusions*
        *This insurance does not apply to:*

. . .
q.      *Gun Shows*
*This insurance does not apply to "bodily injury" or "property damage" arising out of:*

   (i)      *Activities performed by or on behalf of the insured, and/or operations necessary to the promotion and holding of gun or firearm shows.*
   . . .
   *This exclusion applies regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.*

27.      By endorsement form LRS CG 29 03 07 05, Combination Endorsement B, the Policy includes commercial general liability coverage D for Certified Firearms Instructors Professional Liability. That form provides in relevant part:

II.      *CERTIFIED   FIREARMS   INSTRUCTORS   PROFESSIONAL   LIABILITY COVERAGE*
A.      *The following is added to Section I coverage:*
   **Coverage D Certified Firearms Instructors Professional Liability**
   1.      Insuring agreement
      a.      *We shall pay those sums you are legally obligated to pay as damages resulting from a "wrongful act" arising out of the conduct of your services as a "firearms instructor." The "wrongful act" must take place within the "coverage territory" during the Policy period.*
      b.      *We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result . . .*
   2.      Exclusions
   *This endorsement does not apply to:*
      a.      *"Bodily injury", "property damage" or "personal injury". This exclusion shall not apply if the "bodily injury, property damage or personal injury" occurs as a result of the insured's "wrongful act";*
      . . .
      f.      *Dishonest, fraudulent, criminal, illegal, intentional or malicious act or omission;*
      g.      *"Wrongful act" arising out of an insured's failure to have or obtain the license or any other permit as required by law, statute or regulation;*
      . . .
B.      *With respect to coverage provided by coverage D, Section II – WHO IS AN INSURED is replaced by the following:*
   2.      *WHO IS AN INSURED*
      1.      *The name insured;*
      2.      *Your club members while acting in the capacity of a certified "firearms instructor", but only with respect to activities or events sponsored or operated by the named insured.*

. . .

6.    *The following definitions are added to Section 5 definitions*
. . .
*"Firearm" shall mean a weapon, or other fully automatic weapon from which a projectile is discharged by gun powder or by pressure of compressed air.*
*"Firearms Instructor" means a person who is licensed and certified to teach and train in the use of firearms.*
. . .
*"Wrongful act" or "wrongful acts" means any negligent act, error, misstatement, misleading statement, or omission in the performing or failing to perform services as a "firearms instructor."*

## FACTS / THE BIZILJ FAMILY ALLEGATIONS

28.    ("Name Omitted"), a minor, suffered a fatal accident on or about October 26, 2008 when firing a machine gun / Uzi (hereinafter "the Uzi") at Westfield Sportsman's Club.

29.    Each of the defendants in the Underlying Action has been sued by the Bizilj family for claims for negligent entrustment and furnishing of a machine gun / automatic weapon; negligent maintenance of the Uzi; negligent training of the "line officer" (as well as negligent monitoring and supervision of the firing of the weapon); wrongful death; and infliction of emotional distress by the surviving members of the Bizilj family. All of the claims asserted against Spano, D&T, Giuffre, P3 LLC, Fleury, COP Firearms and Training, and WSC, relate to the events surrounding ("Name Omitted")'s death at the Great New England Pumpkin Shoot.

30.    WSC is alleged to have provided ("Name Omitted") and others with the Uzi and/or other machine guns.

31.    WSC violated MGL c. 140, § 130 by furnishing a machine gun to a person under eighteen years of age.

32.    Alternatively, WSC violated MGL c. 140, § 130 by aiding and abetting others by counseling, hiring or otherwise procuring the furnishing of the Uzi / a machine gun to a person under eighteen years of age.

33.     WSC committed involuntary manslaughter, in violation of MGL c. 265, § 13, by participating in, assisting, and/or directing the actions that lead to ("Name Omitted")'s death.

34.     WSC plead *nolo contendre* to the charge of involuntary manslaughter, and agreed to probation under MGL c. 276, § 87 relative to the furnishing machine gun to a minor charge.

35.     Giuffre and Provost are / were the members and/or officers of P3 LLC.

36.     Giuffre, Provost and/or P3 LLC owned the Uzi.

37.     Giuffre and Provost were Class III Federal Firearms License holders.

38.     The Uzi and other machine guns used at the Great New England Pumpkin Shoot were considered a "post-ban dealer sample."

39.     Giuffre, Provost and P3 LLC violated MGL c. 140, § 130 by furnishing a machine gun to a person under eighteen years of ago.

40.     Alternatively, Giuffre, Provost and P3 LLC violated MGL c. 140, § 130 by aiding and abetting others by counseling, hiring or otherwise procuring the furnishing of the Uzi / a machine gun to a person under eighteen years of age.

41.     Giuffre, Provost and P3 LLC committed involuntary manslaughter, in violation of MGL c. 264, § 13, by participating in, assisting in, and/or directing the actions that lead to ("Name Omitted")'s death.

42.     Giuffre and Provost violated 18 USC 44, secs. 921-927 and/or Public Law 99-308 by using the Uzi at the "Great New England Pumpkin Shoot," as the use of the "post-ban dealer sample" was limited to demonstrations for military and/or law enforcement sales.

43.     Spano is / was a member and/or owner of D&T.

44.     Spano and/or D&T brought the Uzi to the Great New England Pumpkin Shoot (either independently or with Giuffre, Provost, and/or P3 LLC) that was used by ("Name Omitted") on or about October 26, 2008.

45.     Spano was a Class III Federal Firearms License holder.

46.     The Uzi and/or other machine guns brought by Spano / D&T independently, or with others, to the Great New England Pumpkin Shoot was considered a "post-ban dealer sample."

47.     Spano and D&T violated MGL c. 140, § 130 by furnishing a machine gun to a person under eighteen years of age.

48.     Alternatively, Spano and D&T violated MGL c. 140, § 130 by aiding and abetting others by counseling, hiring or otherwise procuring the furnishing of the Uzi / a machine gun to a person under eighteen years of age.

49.     Spano and D&T committed involuntary manslaughter, in violation of MGL c. 264, § 13, by participating in, assisting in, and/or directing the actions that lead to ("Name Omitted")'s death.

50.     Spano violated 18 USC 44, secs. 921-927 and/or Public Law 99-308 by using the Uzi at the "Great New England Pumpkin Shoot," as the use of the "post-ban dealer sample" was limited to demonstrations for military and/or law enforcement sales.

51.     Regular membership dues for WSC members in 2008 were $50 for National Rifle Association ("NRA") members, and $80 for non-NRA members.

52.     Giuffre, Provost and Spano did not pay membership dues to WSC in 2008.

53.     Giuffre, Provost and Spano did not watch the orientation video, a prerequisite for membership imposed by WSC on its members.

54.     Giuffre, Provost and Spano did not complete and/or sign a membership application to become members of WSC.

55.     Giuffre, Provost and Spano did not use WSC facilities as members; they only went to WSC grounds once a year as part of participation in the Great New England Pumpkin Shoot.

56.     WSC by-laws restrict WSC membership to persons.

57.     P3 LLC and D&T are not persons.

## COUNT I – DECLARATION THAT CLAIMS AGAINST WSC ARE BARRED BY THE POLICY'S CRIMINAL ACTS EXCLUSIONS

58.     The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 57 as if fully stated herein.

59.     An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are required to defend or indemnify WSC for the claims asserted by the Bizilj family in the Underlying Action.

60.     The Policy excludes coverage for bodily injury arising out of criminal acts.

61.     The Bizilj family's alleged damages are "bodily injuries" that arose out of the criminal acts of WSC.

62.     Coverage for all of the Bizilj family claims is excluded by the Policy's criminal acts exclusions.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.     That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to provide WSC with a defense to any claim asserted in the Underlying Action because of applicable and controlling language and/or exclusions contained in the Policy.

b.     That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to indemnify WSC for any claims asserted against it in the Underlying Action because of the Policy's criminal acts exclusions.

c.      That Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

## COUNT II – DECLARATION THAT CLAIMS AGAINST WSC ARE BARRED BY THE "GUN SHOWS" EXCLUSION

63.      The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 62 as if fully stated herein.

64.      An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are required to defend or indemnify WSC for the claims asserted by the Bizilj family in the Underlying Action.

65.      The Policy excludes coverage for bodily injury arising out of "activities performed by or on behalf of the insured, and/or operations necessary to the promotion and holding of gun or firearm shows."

66.      ("Name Omitted")'s death arose out of WSC's acts of promotion or holding a gun or firearms show, the Great New England Pumpkin Shoot, and/or acts performed necessary to the promotion and holding of the gun or firearms show.

67.      All of the Bizilj family's alleged damages relate to and/or arise out of ("Name Omitted")'s fatal accident.

68.      Coverage for all of the Bizilj family claims are excluded by the Policy's "Gun Shows" exclusion.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to provide WSC with a defense to any claim asserted in the Underlying Action because of applicable and controlling language and/or exclusions contained in the Policy.

b.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to indemnify WSC for any claims asserted against it in the Underlying Action because of the Policy's "Gun Shows" exclusion.

c.      That Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

**COUNT III – DECLARATION THAT GIUFFRE IS NOT AN INSURED UNDER THE POLICY**

69.      The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 68 as if fully stated herein.

70.      An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are required to defend or indemnify Giuffre for the claims asserted in the Underlying Action.

71.      Giuffre was not a member of WSC and does not qualify as an insured under WSC's policy.

72.      Giuffre was not acting as a member of WSC at the time of ("Name Omitted")'s accident.

73.      Giuffre is not being sued by the Bizilj family for any act or omission committed as a member of WSC.

74.      Giuffre is not an insured under the Policy.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to provide Giuffre with a defense to any claim asserted against him in the Underlying Action because of applicable and controlling language contained in the Policy.

b.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to indemnify Giuffre for any claims asserted in the Underlying Action because he is not an insured under the Policy.

c.      That Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

## COUNT IV – DECLARATION THAT PROVOST IS NOT AN INSURED UNDER THE POLICY

75.      The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 74 as if fully stated herein.

76.      An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are required to defend or indemnify Provost for the claims asserted in the Underlying Action.

77.      Provost was not a member of WSC and does not qualify as an insured under WSC's policy.

78.      Provost was not acting as a member of WSC at the time of ("Name Omitted")'s accident.

79.      Provost is not being sued by the Bizilj family for any act or omission committed as a member of WSC.

80.      Provost is not an insured under the Policy.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to provide Provost with a defense to any claim asserted against him in the Underlying Action because of applicable and controlling language contained in the Policy.

b.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to indemnify Provost for any claims asserted in the Underlying Action because he is not an insured under the Policy.

c.      That Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

## COUNT V – DECLARATION THAT SPANO IS NOT AN INSURED UNDER THE POLICY

81.     The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 80 as if fully stated herein.

82.     An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are required to defend or indemnify Spano for the claims asserted in the Underlying Action.

83.     Spano was not a member of WSC and does not qualify as an insured under WSC's policy.

84.     Spano was not acting as a member of WSC at the time of ("Name Omitted")'s accident.

85.     Spano is not being sued by the Bizilj family for any act or omission committed as a member of WSC.

86.     Spano is not an insured under the Policy.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to provide Spano with a defense to any claim asserted against him in the Underlying Action because of applicable and controlling language contained in the Policy.

b.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to indemnify Spano for any claims asserted in the Underlying Action because he is not an insured under the Policy.

c.      That Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

**COUNT VI – DECLARATION THAT P3 LLC IS NOT AN INSURED UNDER THE POLICY**

87.     The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 86 as if fully stated herein.

88.     An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are required to defend or indemnify P3 LLC for the claims asserted in the Underlying Action.

89.     Neither P3 LLC nor its principals (Giuffre and Provost) were members of WSC, and they do not qualify as insureds under WSC's policy.

90.     P3 LLC and its agents were not acting as members of WSC at the time of ("Name Omitted")'s accident.

91.     P3 LLC is not being sued by the Bizilj family for any act or omission committed as a member of WSC.

92.     P3 LLC is not an insured under the Policy.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to provide P3 LLC with a defense to any claim asserted against it in the Underlying Action because of applicable and controlling language contained in the Policy.

b.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to indemnify P3 LLC for any claims asserted in the Underlying Action because it is not an insured under the Policy.

c.      That Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

**COUNT VII – DECLARATION THAT D&T IS NOT AN INSURED UNDER THE POLICY**

93.     The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 92 as if fully stated herein.

94.     An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are required to defend or indemnify D&T for the claims asserted in the Underlying Action.

95.     Neither D&T nor its principal (Spano) were members of WSC, and they do not qualify as insureds under WSC's policy.

96.     D&T and its agents were not acting as members of WSC at the time of ("Name Omitted")'s accident.

97.     D&T is not being sued by the Bizilj family for any act or omission committed as a member of WSC.

98.     D&T is not an insured under the Policy.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.     That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to provide D&T with a defense to any claim asserted against it in the Underlying Action because of applicable and controlling language contained in the Policy.

b.     That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to indemnify D&T for any claims asserted in the Underlying Action because it is not an insured under the Policy.

c.     That Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

## COUNT VIII -- DECLARATION THAT THE CLAIMS AGAINST GIUFFRE ARE BARRED BY THE CRIMINAL ACTS EXCLUSIONS

99.     The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 98 as if fully stated herein.

100.    An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are required to defend or indemnify Giuffre for the claims asserted in the Underlying Action.

101.    The Policy excludes coverage for bodily injury arising out of criminal acts.

102.    The Bizilj family's alleged damages are "bodily injuries" that arose out of the criminal acts of Giuffre.

103.    Coverage for all of the Bizilj family claims is excluded by the Policy's criminal acts exclusions.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.    That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to provide Giuffre with a defense to any claim asserted in the Underlying Action because of applicable and controlling language and/or exclusions contained in the Policy.

b.    That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to indemnify Giuffre for any claims asserted against him in the Underlying Action because of the Policy's criminal acts exclusions.

c.    That Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

## COUNT IX – DECLARATION THAT THE CLAIMS AGAINST PROVOST ARE BARRED BY THE CRIMINAL ACTS EXCLUSIONS

104.    The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 103 as if fully stated herein.

105.    An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are required to defend or indemnify Provost for the claims asserted in the Underlying Action.

106.   The Policy excludes coverage for bodily injury arising out of criminal acts.

107.   The Bizilj family's alleged damages are "bodily injuries" that arose out of the criminal acts of Provost.

108.   Coverage for all of the Bizilj family claims is excluded by the Policy's criminal acts exclusions.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.   That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to provide Provost with a defense to any claim asserted in the Underlying Action because of applicable and controlling language and/or exclusions contained in the Policy.

b.   That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to indemnify Provost for any claims asserted against him in the Underlying Action because of the Policy's criminal acts exclusions.

c.   That Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

## COUNT X – DECLARATION THAT THE CLAIMS AGAINST SPANO ARE BARRED BY THE CRIMINAL ACTS EXCLUSIONS

109.   The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 108 as if fully stated herein.

110.   An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are required to defend or indemnify Spano for the claims asserted in the Underlying Action.

111.   The Policy excludes coverage for bodily injury arising out of criminal acts.

112.   The Bizilj family's alleged damages are "bodily injuries" that arose out of the criminal acts of Spano.

113.    Coverage for all of the Bizilj family claims is excluded by the Policy's criminal acts exclusions.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to provide Spano with a defense to any claim asserted in the Underlying Action because of applicable and controlling language and/or exclusions contained in the Policy.

b.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to indemnify Spano for any claims asserted against him in the Underlying Action because of the Policy's criminal acts exclusions.

c.      That Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

## COUNT XI – DECLARATION THAT THE CLAIMS AGAINST P3 LLC ARE BARRED BY THE CRIMINAL ACTS EXCLUSIONS

114.    The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 113 as if fully stated herein.

115.    An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are required to defend or indemnify P3 LLC for the claims asserted in the Underlying Action.

116.    The Policy excludes coverage for bodily injury arising out of criminal acts.

117.    The Bizilj family's alleged damages are "bodily injuries" that arose out of the criminal acts of P3 LLC and/or its members or agents.

118.    Coverage for all of the Bizilj family claims is excluded by the Policy's criminal acts exclusions.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to provide P3 LLC with a defense to any claim asserted in the Underlying Action because of applicable and controlling language and/or exclusions contained in the Policy.

b.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to indemnify P3 LLC for any claims asserted against it in the Underlying Action because of the Policy's criminal acts exclusions.

c.      That Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

## COUNT XII – DECLARATION THAT THE CLAIMS AGAINST D&T ARE BARRED BY THE CRIMINAL ACTS EXCLUSIONS

119.    The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 118 as if fully stated herein.

120.    An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are required to defend or indemnify D&T for the claims asserted in the Underlying Action.

121.    The Policy excludes coverage for bodily injury arising out of criminal acts.

122.    The Bizilj family's alleged damages are "bodily injuries" that arose out of the criminal acts of D&T and/or its member(s) or agents.

123.    Coverage for all of the Bizilj family claims is excluded by the Policy's criminal acts exclusions.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to provide D&T with a defense to any claim asserted in the Underlying Action because of applicable and controlling language and/or exclusions contained in the Policy.

b.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to indemnify D&T for any claims asserted against it in the Underlying Action because of the Policy's criminal acts exclusions.

c.      That Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

## COUNT XIII – DECLARATION THAT CLAIMS AGAINST GIUFFRE ARE BARRED BY THE "GUN SHOWS" EXCLUSION

124.    The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 123 as if fully stated herein.

125.    An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are required to defend or indemnify Giuffre for the claims asserted in the Underlying Action.

126.    The Policy excludes coverage for bodily injury arising out of "activities performed by or on behalf of the insured, and/or operations necessary to the promotion and holding of gun or firearm shows."

127.    ("Name Omitted")'s death arose out of Giuffre's and/or others and/or WSC's acts of promoting and/or holding a gun or firearms show, the Great New England Pumpkin Shoot, and/or acts performed necessary to the promotion and holding of the gun or firearms show.

128.    All of the Bizilj family's alleged damages relate to and/or arise out of ("Name Omitted")'s fatal accident.

129.    Coverage for all of the Bizilj family claims are excluded by the Policy's Gun Shows exclusion.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to provide Giuffre with a defense to any claim asserted in the Underlying Action because of applicable and controlling language and/or exclusions contained in the Policy.

b.      That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to indemnify Giuffre for any claims asserted against him in the Underlying Action because of the Policy's Gun Shows exclusion.

c.      That Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

## COUNT XIV – DECLARATION THAT CLAIMS AGAINST PROVOST ARE BARRED BY THE "GUN SHOWS" EXCLUSION

130.    The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 129 as if fully stated herein.

131.    An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are required to defend or indemnify Provost for the claims asserted in the Underlying Action.

132.    The Policy excludes coverage for bodily injury arising out of "activities performed by or on behalf of the insured, and/or operations necessary to the promotion and holding of gun or firearm shows."

133.    ("Name Omitted")'s death arose out of Provost's and/or others and/or WSC's acts of promoting and/or holding a gun or firearms show, the Great New England Pumpkin Shoot, and/or acts performed necessary to the promotion and holding of the gun or firearms show.

134.    All of the Bizilj family's alleged damages relate to and/or arise out of ("Name Omitted")'s fatal accident.

135.    Coverage for all of the Bizilj family claims are excluded by the Policy's Gun Shows exclusion.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.    That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to provide Provost with a defense to any claim asserted in the Underlying Action because of applicable and controlling language and/or exclusions contained in the Policy.

b.    That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to indemnify Provost for any claims asserted against him in the Underlying Action because of the Policy's Gun Shows exclusion.

c.    That Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

## COUNT XV – DECLARATION THAT CLAIMS AGAINST SPANO ARE BARRED BY THE "GUN SHOWS" EXCLUSION

136.    The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 135 as if fully stated herein.

137.    An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are required to defend or indemnify Spano for the claims asserted in the Underlying Action.

138.    The Policy excludes coverage for bodily injury arising out of "activities performed by or on behalf of the insured, and/or operations necessary to the promotion and holding of gun or firearm shows."

139.   ("Name Omitted")'s death arose out of Spano's and/or others and/or WSC's acts of promoting and/or holding a gun or firearms show, the Great New England Pumpkin Shoot, and/or acts performed necessary to the promotion and holding of the gun or firearms show.

140.   All of the Bizilj family's alleged damages relate to and/or arise out of ("Name Omitted")'s fatal accident.

141.   Coverage for all of the Bizilj family claims are excluded by the Policy's Gun Shows exclusion.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.   That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to provide Spano with a defense to any claim asserted in the Underlying Action because of applicable and controlling language and/or exclusions contained in the Policy.

b.   That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to indemnify Spano for any claims asserted against him in the Underlying Action because of the Policy's Gun Shows exclusion.

c.   That Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

## COUNT XVI – DECLARATION THAT CLAIMS AGAINST P3 LLC ARE BARRED BY THE "GUN SHOWS" EXCLUSION

142.   The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 141 as if fully stated herein.

143.   An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are required to defend or indemnify P3 LLC for the claims asserted in the Underlying Action.

144.    The Policy excludes coverage for bodily injury arising out of "activities performed by or on behalf of the insured, and/or operations necessary to the promotion and holding of gun or firearm shows."

145.    ("Name Omitted")'s death arose out of P3 LLC's and/or others and/or WSC's acts of promoting and/or holding a gun or firearms show, the Great New England Pumpkin Shoot, and/or acts performed necessary to the promotion and holding of the gun or firearms show.

146.    All of the Bizilj family's alleged damages relate to and/or arise out of ("Name Omitted")'s fatal accident.

147.    Coverage for all of the Bizilj family claims are excluded by the Policy's Gun Shows exclusion.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.    That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to provide P3 LLC with a defense to any claim asserted in the Underlying Action because of applicable and controlling language and/or exclusions contained in the Policy.

b.    That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to indemnify P3 LLC for any claims asserted against it in the Underlying Action because of the Policy's Gun Shows exclusion.

c.    That Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

## COUNT XVII – DECLARATION THAT CLAIMS AGAINST D&T ARE BARRED BY THE "GUN SHOWS" EXCLUSION

148.    The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 147 as if fully stated herein.

149.    An actual controversy within the jurisdiction of this Court exists between the parties as to whether or not Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are required to defend or indemnify D&T for the claims asserted in the Underlying Action.

150.    The Policy excludes coverage for bodily injury arising out of "activities performed by or on behalf of the insured, and/or operations necessary to the promotion and holding of gun or firearm shows."

151.    ("Name Omitted")'s death arose out of D&T's and/or others and/or WSC's acts of promoting and/or holding a gun or firearms show, the Great New England Pumpkin Shoot, and/or acts performed necessary to the promotion and holding of the gun or firearms show.

152.    All of the Bizilj family's alleged damages relate to and/or arise out of ("Name Omitted")'s fatal accident.

153.    Coverage for all of the Bizilj family claims are excluded by the Policy's Gun Shows exclusion.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.    That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to provide D&T with a defense to any claim asserted in the Underlying Action because of applicable and controlling language and/or exclusions contained in the Policy.

b.    That under the Policy, Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 are not required to indemnify D&T for any claims asserted against it in the Underlying Action because of the Policy's Gun Shows exclusion.

c.    That Certain Underwriters at Lloyd's, London subscribing to Policy L200820173 be awarded all other relief allowed by law or equity which the Court deems appropriate and just.

**THE PLAINTIFFS CLAIM A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Certain Underwriters at Lloyd's, London,
By Their Attorney:

Dated:  October 7, 2010

_____/s/ Thomas B. Farrey, III_____
**THOMAS B. FARREY, III**
Burns & Farrey
446 Main Street
Worcester, MA 01608
Tel.:   508.756.6288
BBO:   159880
EMail:  farrey@burnsandfarrey.com

JPM/mm
(144)